# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

LEWIS E. VAN FOSSEN,
        Appellant,

      v.

DEPARTMENT OF COMMERCE,
        Agency.

DOCKET NUMBER
SF-1221-17-0403-W-1

DATE: July 26, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

Lewis E. Van Fossen, Honolulu, Hawaii, pro se.

Ashley Geisendorfer, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## REMAND ORDER

¶1       The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we AFFIRM the initial decision to the extent that it found that the appellant did not nonfrivolously allege that he made any protected

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

whistleblowing disclosures. We MODIFY the initial decision to the extent that it found that the appellant did not exhaust his claims regarding his performance reviews and previous disciplinary actions and instead find that his appeal is untimely with respect to these claims. We also MODIFY the initial decision to find that the appellant engaged in protected whistleblowing activity only when he filed complaints with the Office of Special Counsel (OSC) and the agency's Office of the Inspector General (OIG). We further MODIFY the initial decision to find that the appellant nonfrivolously alleged that his protected whistleblowing activity was a contributing factor in his first-line supervisor's decision to place him on a performance improvement plan (PIP), the proposing and deciding officials had constructive knowledge of this activity, and the activity was a contributing factor in his proposed removal and removal. We GRANT the appellant's petition for review and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2        The appellant was employed at the agency as a Fishery Resource Management Specialist in Honolulu, Hawaii. Initial Appeal File (IAF), Tab 1 at 7. The appellant's first-line supervisor began supervising him on February 19, 2014. *Id*. at 8. On April 15, 2015, she conducted a progress review of the appellant's performance and gave him written feedback. *Id*. At that point, she notified him that his performance was at the "eligible" performance level and that he had several performance deficiencies under the critical elements of (1) Mission and (2) Administration. *Id*. On May 27, 2015, the appellant received an official reprimand for disrespectful and unprofessional conduct. IAF, Tab 14 at 65-67. Effective October 5, 2015, the agency placed him on a Performance Improvement Plan (PIP) on the basis of his unsatisfactory performance under Critical Element (1) Mission. IAF, Tab 1 at 8. The PIP concluded on January 8, 2016. *Id*.

¶3    The agency proposed the appellant's removal on the basis of unacceptable performance on August 15, 2016. *Id.* at 7-17. The Director of the Office of Sustainable Fisheries stated that the agency selected him to serve as the proposing official because he was outside of the appellant's chain of command. *Id*. at 7. He stated that he based the proposal on an independent assessment of the appellant's performance to provide him with a review outside of his October 5, 2015 PIP. *Id*. He indicated that, on the basis of this review, he found that the appellant failed to improve his performance in the Critical Element (1) Mission or achieve the specific requirements of that element. *Id*. at 8-9. The Deputy Assistant Administrator for Operations, who was also outside of the appellant's chain of command, served as the deciding official. *Id*. at 18-33. The agency imposed the removal on October 12, 2016. *Id*.

¶4    In July 2016, after the beginning of the PIP, and prior to the proposal to remove him, the appellant filed a complaint with OSC. IAF, Tab 16 at 8-15. He alleged the following: (1) in May 2015, he disclosed to OIG that his first-line supervisor retaliated against him through the manner in which she conducted her performance-based discipline and that agency officials were disciplining him; and (2) agency officials configured his computer to interfere with his work and to surveille him. *Id*. at 11-13. He also asserted that he had engaged in protected activity when he filed complaints with (1) OSC, (2) OIG, and (3) the agency's Office of Civil Rights (OCR) from 2014 to 2016. *Id*. at 12. The appellant asserted that, in retaliation for these protected whistleblowing disclosures and activities, the agency conducted a retaliatory investigation against him, assigned him poor performance ratings, and placed him on a PIP. *Id*. at 11-13. At some point after the proposal and removal decision, the appellant amended his OSC complaint to include the proposal and removal decisions. IAF, Tab 1 at 46.

¶5 On January 25, 2017, OSC issued its initial determination letter.[2] *Id*. at 46-47. It stated that it would not consider the appellant's claims regarding his performance ratings and other disciplinary actions that were the subject of his prior complaints in MA-11-1110 and MA-14-4863.[3] *Id*. at 46. OSC also described several reasons why it found that the agency did not have a strong motive to retaliate against the appellant. *Id*. at 47. For instance, OSC stated that he merely speculated that his first-line supervisor had placed him on a PIP at the direction of his former first-line supervisor, he began filing complaints against her after she began to discipline him, he never met either the proposing or deciding officials, and these officials were not in his chain of command. *Id*. OSC further stated that, on the basis of the evidence that the appellant provided, it appeared that the agency would be able to show that it took the actions at issue because of his performance and not because of a retaliatory motive. *Id*. The appellant responded, asserting that he had engaged in over 30 protected activities and agency officials, including his first-line supervisor and the proposing and deciding officials, had knowledge of these activities. IAF, Tab 16 at 16-32. After considering the appellant's response, OSC issued its closeout letter on February 27, 2017. IAF, Tab 1 at 43.

¶6 The appellant then filed the instant IRA appeal. IAF, Tab 1. Without holding the appellant's requested hearing, the administrative judge issued an initial decision that dismissed the appeal for lack of jurisdiction. IAF, Tab 19,

[2] The record contains a copy of the appellant's January 2011 OSC complaint. IAF, Tab 12 at 5-16. In this complaint, he asserted that he received lower performance scores in retaliation for disclosing possible withholding or destruction of protected information to his first-line supervisor and OIG and disclosing to his supervisor in 2007 and 2008 that it was possible that observers were watching movies or sleeping instead of observing fishing gear. *Id*.

[3] The letter also stated that it would not consider the claims regarding the appellant's performance evaluation as they had been the subject of his complaint in MA-16-4287. IAF, Tab 1 at 46. However, as that complaint number was that of the investigation at issue, we assume that this was a typographical error.

Initial Decision (ID). She found that the appellant did not nonfrivolously allege that he made any protected disclosures and that, although he engaged in several instances of protected whistleblowing activity, he failed to nonfrivolously allege that this protected activity was a contributing factor in the decision to place him on a PIP or to propose or impose his removal. ID at 7-18.

¶7    The appellant has filed a petition for review and the agency has responded in opposition to his petition.[4] Petition for Review (PFR) File, Tabs 1, 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶8    The appellant may establish jurisdiction over this IRA appeal if he demonstrates by preponderant evidence[5] that he exhausted his administrative remedy before OSC and makes nonfrivolous allegations[6] of the following: (1) he made a protected whistleblowing disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected whistleblowing activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or activity was a contributing factor in the

---

[4] The appellant has filed a reply, which the agency has moved to strike as untimely. PFR File, Tabs 5-6. Under the Board's regulations, any reply to a response to a petition for review must be filed within 10 days after the date of service of the response to the petition for review. 5 C.F.R. § 1201.114(e). The agency filed its response on November 17, 2017, via e-Appeal. PFR File, Tab 4. Because the appellant was an e-filer, the Board's regulations deem that this response was served on the appellant on that date. *Id.* at 17; *see* 5 C.F.R. § 1201.14(m)(2). Accordingly, the reply was due on November 27, 2017. The appellant did not submit his reply until January 9, 2018, or 43 days after the filing deadline. He has not provided any excuse for the delay. Thus, we have not considered the untimely reply.

[5] A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

[6] A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue. *Lewis v. Department of Defense*, 123 M.S.P.R. 255, ¶ 7 (2016); 5 C.F.R. § 1201.4(s). An allegation generally will be considered nonfrivolous when, if an individual makes such an allegation under oath or penalty of perjury, it is more than conclusory, plausible on its face, and material to the legal issues in the appeal. *Lewis*, 123 M.S.P.R. 255, ¶ 7; 5 C.F.R. § 1201.4(s).

agency's decision to take or fail to take, or threaten to take or fail to take, a personnel action.[7] 5 U.S.C. §§ 1214(a)(3), 1221(e)(1); *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *Lewis v. Department of Defense*, 123 M.S.P.R. 255, ¶ 7 (2016); *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); 5 C.F.R. § 1201.57(a)(1), (b), (c)(1). If an appellant establishes jurisdiction over his IRA appeal, he is entitled to a hearing on the merits of his claim, which he must prove by preponderant evidence. *Salerno*, 123 M.S.P.R. 230, ¶ 5; 5 C.F.R. § 1201.57(c)(4). If he proves that his protected whistleblowing disclosure or activity was a contributing factor in a personnel action that was taken or threatened, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken or threatened the same personnel action in the absence of the protected whistleblowing disclosure or activity. 5 U.S.C. § 1221(e)(1)-(2); *Carr v. Social Security Administration*, 185 F.3d 1318, 1322–23 (Fed. Cir. 1999); *see Salerno*, 123 M.S.P.R. 230, ¶ 5.[8]

---

[7] The administrative judge found that the appellant did not exhaust his administrative remedy regarding his performance ratings and other disciplinary actions that were the subject of his 2011 and 2014 OSC complaints. ID at 5; IAF, Tab 1 at 46-47, Tab 12 at 5-16. We modify the initial decision to find instead that the appellant filed an untimely Board appeal regarding these matters. Under 5 U.S.C. § 1214(a)(3)(A), an appellant may file an IRA appeal with the Board once OSC closes its investigation into his complaint and no more than 60 days have elapsed since notification of the closure was provided to him. *Kalus v. Department of Homeland Security*, 123 M.S.P.R. 226, ¶ 7 (2016). Under the Board's regulations implementing that statutory time limit, an IRA appeal must be filed no later than 65 days after the date that OSC issues its close-out letter, or, if the letter is received more than 5 days after its issuance, within 60 days of the date of receipt. 5 C.F.R. § 1209.5(a)(1). The appellant has not met his burden of demonstrating that he filed timely appeals regarding the 2011 and 2014 complaints and thus we do not consider these claims.

We find that the appellant has otherwise demonstrated exhaustion regarding the remainder of his claims.

[8] The U.S. Court of Appeals for the Federal Circuit decided *Carr* prior to the enactment of the Whistleblower Protection Enhancement Act of 2012. Pub. L. No. 112-199,

<u>The appellant did not nonfrivolously allege that he made any protected whistleblowing disclosures.</u>

¶9    The administrative judge found that the appellant failed to nonfrivolously allege that he made any protected whistleblowing disclosures.  ID at 7-12.  Although it is unclear to whom he made this disclosure, the appellant asserted that he made one disclosure that the agency was engaging in a disciplinary campaign against him.  IAF, Tab 16 at 13.  He also asserted that he disclosed to OIG that his supervisor was retaliating against him through performance-based discipline and to both OIG and the information technology (IT) incident response team that agency officials configured his computer to improperly access it, interfere with his work, and sabotage him.  *Id*. at 13-14, 20-21.  On review, the appellant challenges, in particular, the administrative judge's finding that he failed to make a protected disclosure regarding computer sabotage.  PFR File, Tab 1 at 7-10.

¶10    A protected whistleblowing disclosure is a disclosure of information that the appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  5 U.S.C. § 2302(b)(8); *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 7 (2016).  At the jurisdictional stage, the appellant only is burdened with making a nonfrivolous allegation that he reasonably believed that his disclosure evidenced one of these circumstances.  *Bradley*, 123 M.S.P.R. 547, ¶ 7.  The proper test for determining whether an employee had a reasonable belief that his disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the disclosure evidenced one of the circumstances

126 Stat. 1465.  However, subsequent changes in the law do not affect the relevant holding.

described in 5 U.S.C. § 2302(b)(8).  *Id*.  Vague, conclusory, unsupported, and pro forma allegations of alleged wrongdoing do not meet the nonfrivolous pleading standard needed to establish the Board's jurisdiction.  *El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 6 (2015), *aff'd*, 663 F. App'x 921 (Fed. Cir. 2016).

¶11    We agree with the administrative judge that the appellant's arguments regarding his first-line supervisor and the agency's discipline do not constitute a nonfrivolous allegation of a protected disclosure.  We agree that he has not nonfrivolously alleged an abuse of authority or a violation of a law, rule, or regulation.  ID at 9-10.  Specifically, we have considered that harassment by a supervisor may constitute an abuse of authority.  *See Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 14 (2015).  However, we find that the appellant's assertions that the agency and his supervisor disciplined him for his disagreement with how his assignments were evaluated do not rise to this level.  We also can find no law, rule, or regulation that is applicable to this situation.  Additionally, we find that the appellant's arguments regarding how the agency or his supervisor disciplined him are too vague and debatable to constitute a nonfrivolous allegation of gross mismanagement.  *See Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶¶ 9-10 (2015) (holding that a disclosure of gross mismanagement excludes management decisions that are merely debatable).

¶12    The appellant also has not established jurisdiction over his disclosure that the agency somehow tampered with his computer, including creating "back doors."  IAF, Tab 16 at 11-12.  To the extent that he is asserting that the agency or his first-line supervisor somehow violated a law, rule, or regulation or created a substantial and specific danger to public health or safety, we find that he has identified no such law, rule, or regulation and his assertions are unsupported as opposed to substantial and specific.  *See Lewis*, 123 M.S.P.R. 255, ¶ 12 (finding that the appellant failed to make a nonfrivolous allegation of a violation of law, rule, or regulation or a substantial and specific danger to public health or safety

when he asserted that an agency manager exhibited signs of schizophrenia in response to the 2011 earthquake in Washington, D.C.). Further, we agree with the administrative judge that the appellant's assertions regarding the agency's interference with his computer do not constitute a nonfrivolous allegation of an abuse of authority as they are not supported in the record and a reasonable person would find his allegations to be implausible. ID at 10-12. Accordingly, we agree with the administrative judge that the appellant has failed to nonfrivolously allege that he made a protected disclosure.

The appellant nonfrivolously alleged that he engaged in protected whistleblowing activity only with respect to his OIG and OSC complaints.

¶13    Although we find that the appellant has not nonfrivolously alleged that he made any protected whistleblowing disclosures, we find that he nonfrivolously alleged that he engaged in protected whistleblowing activity by filing complaints with OSC and OIG. The appellant asserted before OSC that he engaged in more than 30 instances of protected activity from 2002 to 2016, including 26 specifically described activities. IAF, Tab 16 at 17-21. This activity includes seven OIG complaints, four OSC complaints, a 2002 internal report of payroll fraud, three grievances, six informal grievances and other complaints, a complaint to the information technology (IT) incident response team, a workers' compensation complaint, and three complaints regarding discrimination, including two equal employment opportunity (EEO) complaints with the OCR. IAF, Tab 14 at 47-54, Tab 16 at 12, 17-21.

¶14    The administrative judge found that the appellant exhausted and nonfrivolously alleged that he engaged in four instances of protected whistleblowing activity on the basis of three OIG complaints and one administrative grievance that also was disclosed to OIG. ID at 13-14. We modify this decision to find that, although the appellant nonfrivolously alleged that several of his complaints to OSC and OIG were protected under 5 U.S.C. § 2302(b)(9)(C), his other activity is not protected whistleblowing activity.

Instead, this other activity involves grievances and complaints other than with regard to remedying a violation of 5 U.S.C. § 2302(b)(8), internal investigations, and complaints limited to EEO matters.

¶15    We find that the appellant nofrivolously alleged that he engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) when he filed several OIG and OSC complaints.  Under 5 U.S.C. § 2302(b)(9)(C), the appellant engages in protected whistleblowing activity by filing complaints with OIG and OSC. *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8.  Disclosures of information to an agency's OIG or to OSC are protected, regardless of their content, as long as such disclosures are made "in accordance with applicable provisions of law." *Id*.  The appellant stated that he filed the following OIG complaints:  (1) in 2009, he asserted that employees were violating the telework policy; (2) in 2010, he asserted that a photograph had been withheld or improperly archived; (3) in 2014, he asserted that his former first-line supervisor failed to assign work to him; (4) in 2015, he asserted that, since March 2015, he was being set up for a performance-based action through a PIP; (5) in 2015, he asserted that his first-line supervisor subjected him to a hostile work environment, including ramping up progressive discipline; (6) in 2015, he asserted that the agency improperly engaged in a criminal investigation by entering his office and sending pictures of a stuffed turtle to law enforcement officials; and (7) in 2016, he asserted that the agency violated 18 U.S.C. § 1030 by engaging in unauthorized access to a Government computer.  IAF, Tab 14 at 6-9, 18-22, Tab 16 at 17-21.  He also stated that he filed previous OSC complaints in 2003, 2011, approximately 2013, and 2014.  IAF, Tab 16 at 17-19. Specifically, he stated that his 2011 complaint challenged his performance ratings and his 2014 complaint challenged his prior first-line supervisor's decision to "idle" him.  *Id*. at 18-19.  We find that the appellant has nonfrivolously alleged

that he engaged in protected whistleblowing activity by filing these OIG and OSC complaints in accordance with law.[9]

¶16    The Board does not have jurisdiction over the appellant's other claims. He asserts that the agency retaliated against him for filing formal and informal grievances and workers' compensation complaint. Pursuant to 5 U.S.C. § 2302(b)(9)(A)(i), an employee engages in protected activity over which the Board has jurisdiction in an IRA appeal when he engages in "any appeal, complaint, or grievance right granted by any law, rule, or regulation—with regard to remedying a violation of [5 U.S.C. § 2302(b)(8)]." The Board lacks jurisdiction over the appellant's assertion regarding his workers' compensation claim because filing such a claim is not a protected activity. *See Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 9 (2014). Further, the Board only has jurisdiction in an IRA appeal over allegations of retaliation for filing a grievance when the grievance concerns remedying a violation of 5 U.S.C. § 2302(b)(8). *See Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶¶ 6-7 (2013). These instances involve the appellant's disagreements with his first-line supervisor and other agency officials and pertain to matters such as challenging his workload, instructions, deadlines, and performance reviews, reporting rumors, and

---

[9] We have considered the appellant's claim that the agency conducted a criminal investigation against him by searching his office in the context of whether he engaged in protected whistleblowing activity. IAF, Tab 16 at 20-21. To the extent that the appellant asserts that the investigation constituted a personnel action, we find that an investigation is not generally a personnel action. *See Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 22 n.12 (2013). In this regard, the National Defense Authorization Act for Fiscal Year 2018 (NDAA of 2018), Pub. L. No 115-91, § 1097(c)(4), 131 Stat. 1283, 1619, signed into law on December 12, 2017, amended 5 U.S.C. § 1214 to allow OSC to petition the Board for corrective action on behalf of an employee due to an agency's investigation of the employee if it was commenced, expanded, or extended in retaliation for protected whistleblowing activity. 5 U.S.C. § 1214(j). Regardless of any questions as to whether this amendment applies retroactively, it does not apply to this appeal because OSC has not petitioned the Board for such relief.

requesting a transfer. IAF, Tab 16 at 17-21. However, none involves his challenge of a violation of 5 U.S.C. § 2302(b)(8). Accordingly, we do not have jurisdiction over the appellant's claims regarding this activity.

¶17    Additionally, we lack jurisdiction over the appellant's claims of retaliation regarding the IT incident response team and his report regarding payroll fraud. Participation in an internal investigation does not constitute protected activity under 5 U.S.C. § 2302(b)(9)(A)(i) because it is not an initial step toward taking legal action against the agency for a perceived violation of employment rights.[10] *See Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 18 (2016). The appellant has not asserted that the IT incident response team or the payroll fraud report involved his employment rights. Accordingly, we find that his involvement was not protected.

¶18    In an IRA appeal, there is also no jurisdiction over claims that are limited to discrimination or EEO matters. 5 U.S.C. § 1221(e); *Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶ 16 (2016); 5 C.F.R. § 1209.2(c). The appellant asserted that he complained to OCR that the agency discriminated against him on the basis of his disabilities. IAF, Tab 16 at 21. Thus, this EEO complaint did not constitute protected whistleblowing activity. He also has not asserted that his 2003 EEO complaint or 2012 complaint regarding racially insensitive language involved anything other than EEO matters. *Id.* at 17-18. Accordingly, the Board lacks jurisdiction over the appellant's claims of retaliation on the basis of these complaints. We find that he has only

---

[10] After the issuance of the initial decision, Congress passed the NDAA of 2018, which, in section 1097(c)(1), amended 5 U.S.C. § 2302(b)(9)(C) to provide protections for individuals who cooperate with or disclose information to "any other component responsible for internal investigation or review." However, as we found in *Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 29-33, *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023), this statute is not retroactive. Accordingly, the appellant cannot claim that his participation in the internal agency processes, other than with the OIG, constituted protected whistleblowing activity.

nonfrivolously alleged that he engaged in protected activity with respect to his disclosures to OIG and OSC.

The appellant has nonfrivolously alleged that his 2014 and 2015 OIG and OSC complaints were a contributing factor in the decision to place him on a PIP.

¶19     Having found that the appellant has nonfrivolously alleged that his complaints to OSC and OIG constituted protected whistleblowing activity, we next modify the initial decision to find that he nonfrivolously alleged that his protected whistleblowing activity was a contributing factor in his placement on a PIP. One way to meet his burden regarding this element is to nonfrivolously allege that the official who took the personnel action knew of the protected whistleblowing activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the activity was a contributing factor in the personnel action. *Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 7 (2014).

¶20     We agree with the administrative judge that the appellant's first-line supervisor knew about his protected whistleblowing activity before placing him on the PIP. ID at 14. The appellant repeatedly informed her about his protected activity. In a June 2015 grievance to his first-line supervisor regarding a reprimand, the appellant stated that she was retaliating against him for prior OSC and OIG activity. IAF, Tab 14 at 11-16. In July 2015, the appellant emailed her to state that he was filing a grievance regarding unreasonable deadlines, unclear instructions, and excessive workloads. *Id*. at 47-53. In that email, he alleged that she was retaliating against him for his July 2014 OIG complaint and stated that he would expand another OIG complaint, which was filed on May 28, 2015. *Id*. at 47. She placed him on a PIP, effective October 5, 2015. IAF, Tab 1 at 8. Thus, we find that she knew about the appellant's OIG and OSC activity when she placed him on a PIP.

¶21     Having found that the appellant nonfrivolously alleged that his first-line supervisor knew about his protected whistleblowing activity, we also modify the

initial decision to find that the activity occurred within a period of time such that he has demonstrated that it was a contributing factor to his placement on a PIP. The Board has found that personnel actions alleged to have begun within 1 to 2 years of the appellant's protected whistleblowing disclosures or activity satisfied the timing prong of the knowledge/timing test. *See, e.g.*, *Salerno*, 123 M.S.P.R. 230, ¶ 14 (finding that the appellant made a nonfrivolous allegation that his protected disclosure was a contributing factor to his 30-day suspension when the decision letter was issued approximately 15 months after his disclosure to OSC); *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶¶ 20-22 (2015) (finding that the appellant proved that his August 2010 disclosures were a contributing factor in the agency's failure to give him a 40-hour time-off award in June 2012). The appellant filed his OSC complaints in 2014 and 2015. IAF, Tab 1 at 46-47. Although it is unclear what dates the appellant filed his OIG complaints, he stated that he filed them in 2014 and 2015, prior to being placed on a PIP in October 2015. Because he asserted that these complaints were dated less than 2 years before he was placed on the PIP, we find that he has nonfrivolously alleged that these OSC and OIG complaints were a contributing factor to his placement on the PIP.

<u>The appellant has nonfrivolously alleged that the proposing and deciding officials had constructive knowledge of his protected activity and that the protected activity was a contributing factor in their decisions.</u>

¶22    We modify the initial decision to find that the appellant has nonfrivolously alleged that the proposing and deciding officials had constructive knowledge of his protected whistleblowing activity and to find that this activity was a contributing factor in the proposal and decision to remove the appellant. The administrative judge found that the appellant failed to nonfrivolously allege that either the proposing or the deciding officials had actual knowledge of his protected activity. ID at 15-18. She found that, although the appellant speculated that the proposing official would have become aware of his reputation for

participating in protected activity, there was no such evidence and the agency selected the proposing official, who worked in Silver Spring, Maryland, as opposed to in the appellant's duty station in Honolulu, Hawaii, to provide the appellant an independent review of his removal. ID at 15-16. The administrative judge also found no evidence that the deciding official knew of the appellant's claims of retaliation or his protected activity. ID at 16-17. She noted that the deciding official's summary of the appellant's response to the notice of proposed removal indicated his general awareness of some of the appellant's protected activity. ID at 17-18. However, she found that this general information did not indicate that he had knowledge of the appellant's protected activity. ID at 18. Accordingly, she concluded that the appellant did not nonfrivolously allege that either the proposing or deciding official had constructive knowledge of his protected activity. *Id.* The appellant asserts that agency officials were influenced to take action against him, including through his former first-line supervisor. PFR File, Tab 1 at 10-13. We find instead that these officials had constructive knowledge of the appellant's protected activity through his first-line supervisor at the time of his proposed and imposed removal.

¶23    While it is true that the proposing and deciding officials may not have had actual knowledge of the appellant's protected whistleblowing activity, an appellant also may demonstrate that a protected whistleblowing disclosure or whistleblowing activity was a contributing factor in a personnel action that the agency either took or threatened to take by proving that the official taking the action had constructive knowledge of the protected whistleblowing disclosure or activity. *Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 19 (2014). An appellant may establish an official's constructive knowledge of a protected whistleblowing disclosure or activity by demonstrating that an individual with actual knowledge of the disclosure or activity influenced the official accused of taking the retaliatory action. *Id.*

¶24 The proposing official stated that he had been selected to provide the appellant an independent review outside of his supervisory chain. IAF, Tab 1 at 7. However, the proposal and decision came about after the appellant's placement on the PIP. Both the proposal and decision repeatedly mentioned the appellant's first-line supervisor, her assessment of the appellant's work, and his failure to succeed, despite her willingness to meet with and assist him. *Id.* at 8-15, 23-33. Considering that the proposal and decision are so intertwined with the PIP and the appellant's first-line supervisor, we find that the appellant has nonfrivolously alleged that the proposing and deciding officials had constructive knowledge of his protected whistleblowing activity.[11]

¶25 Because we conclude that the appellant has made a nonfrivolous allegation that his protected whistleblowing activity under 5 U.S.C. § 2302(b)(9)(C) was a contributing factor in the agency's decision to place him on a PIP, propose his removal, and remove him, the Board has jurisdiction over this appeal, and he is entitled to a hearing on the merits. *See Salerno*, 123 M.S.P.R. 230, ¶ 14. We thus remand the appeal to the regional office for further adjudication consistent with this Remand Order.[12]

---

[11] The appellant stated that the deciding official probably had actual knowledge of one of his OIG complaints as he oversaw the agency component involved in the complaint. IAF, Tab 16 at 20-21. Because we find that the appellant has established jurisdiction over his allegation that he was removed in retaliation for his whistleblowing activity on the basis of the deciding official's constructive knowledge of that activity, we need not address this contention.

[12] The remand initial decision will incorporate the findings from this order and provide a notice of appeal rights for all claims raised by the appellant.

**ORDER**

¶26     For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:                    <u>      /s/ for                    </u>
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.